## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| ROLANDO CRUZ LOPEZ and JAMES FOXE, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| ALEJANDRO PENA, individually; UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES DEPARTMENT OF HOMELAND SECURITY | § § § § § § | No. 2-12-CV-165-J |
| Defendants. | § § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alejandro Pena's *Motion to Dismiss*, filed December 31, 2012. Officer Pena seeks to dismiss Count II of the complaint, wherein *pro se* Plaintiff Rolando Cruz Lopez claims that Pena, in his individual capacity, violated 18 U.S.C. § 2701(a) of the Stored Communications Act by accessing certain emails in Cruz Lopez's Yahoo! account. Pena advances three reasons to dismiss Count II: (1) Cruz Lopez fails to state a claim; (2) Pena is entitled to qualified immunity; and (3) a two-year statute of limitations bars Count II.

### Background

Plaintiffs filed their six-count complaint on August 7, 2012. Each count stems from an August 8–9, 2009 incident at the Dallas/Fort Worth International Airport during which Customs and Border Protection (CBP) officers—including Pena—detained Cruz Lopez en route to visit his friend, Plaintiff Foxe, in Amarillo. During secondary inspection, Pena discovered in Cruz Lopez's wallet the usernames and passwords to his "on-line bank account and personal email accounts." Using this login information, Pena allegedly accessed Cruz Lopez's Yahoo! email account and online bank account, viewing and printing email messages sent within the previous

three months and also printing a copy of—and exhibiting to Cruz Lopez—a deposited check (which Cruz Lopez saw but did not recognize as his check until "later"). Using this and perhaps other information found while rummaging through those accounts, Pena executed an expedited removal order against Cruz Lopez for working in the United States as Foxe's employee in violation of visa restrictions.

Cruz Lopez claims that in January 2012, in response to a FOIA request made to U.S. Citizenship and Immigration Services, he discovered (for the first time, he says) that Pena had accessed his Yahoo! account and printed various emails.

Cruz Lopez claims in Count II—the only count remaining against Pena—that Pena violated the Stored Communications Act by accessing emails "between Plaintiff Cruz Lopez and an acquaintance sent through Cruz Lopez's Yahoo email account." He seeks actual and punitive damages, fees and costs.

## Legal Standard

A qualified immunity-based motion to dismiss is generally evaluated under the Rule 12(b)(6) rubric. *See Collins v. Ainsworth*, 382 F.3d 529, 536 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996); *Richard v. Capps*, 2007 WL 2428928, at *2 n.6 (N.D. Tex. Aug. 28, 2007). Pena states that "Lopez's allegations fail to state a claim . . . for the same reasons [he claims] qualified immunity."

In determining motions for failure to state a claim, the Court first identifies allegations not entitled to the assumption of truth due to their lack of factual support, then assumes the veracity of the remaining non-fanciful alleged facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The Court then denies the motion to dismiss if the complaint "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

When an official is sued in his individual capacity, however, a modification to the basic Rule 12(b)(6) standard applies.  The official's qualified immunity defense fails only if the complaint, with "factual detail and particularity," states facts plausibly alleging that the official, engaging in objectively unreasonable conduct, (1) violated a constitutional or statutory right that (2) was at the time, and still is, clearly established. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (citing *Jackson v. Widnall,* 99 F.3d 710, 715–16 (5th Cir. 1996)); *see Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011).  If Cruz Lopez cannot satisfy the first step in this analysis, in the light most favorable to him, then "the facts that [he] has alleged . . . [do not] make out a violation" under Rule 12(b)(6).  *Pearson v. Callahan*, 553 U.S. 223, 232 (2009); *see Morgan*, 659 F.3d at 384.

As with qualified immunity, the Court evaluates the statute of limitations defense under 12(b)(6).  *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

## Limitations

The claims against Pena in Count II are governed by a two-year statute of limitations: "A civil action under this section may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation." 18 U.S.C. 2707(f).  Cruz Lopez filed Count II against Pena in August 2012.  Pena argues that the claim against him is therefore time-barred because violation of the SCA, if any, occurred during

his August 2009 inspection of Cruz Lopez.  Cruz Lopez claims that the discovery rule applies to toll the statute of limitations until receiving the January 2012 FOIA disclosure.

A plausible interpretation of the complaint's facts, in the light most favorable to Cruz Lopez, is that he did not have a reasonable opportunity to discover SCA violations until January 2012.  Cruz Lopez knew in August 2009 that (1) CBP officers had bank and email login information from his wallet and that (2) Pena had shown him a document (identified at some point as a copy of a check deposited in Cruz Lopez's bank account) which Pena said proved Cruz Lopez's employment in the United States.  It is plausible, however, that Cruz Lopez would not reasonably have concluded from these facts that someone had accessed emails on his Yahoo! account.  Therefore, dismissal on limitations is DENIED.

## **Qualified Immunity**

With Fourth Amendment protection of online networks uncertain, Congress passed the Stored Communications Act in 1986 to offer "network account holders a range of statutory privacy rights against access to stored account information held by network service providers." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1212 (2004).  Count II is based on 18 U.S.C. § 2701(a) of the SCA, which protects electronic communications while in electronic storage and is made civilly actionable by § 2707.  Cruz Lopez, in response to Pena's *Motion to Dismiss*, argues that Pena also violated § 2703, which limits governmental entities seeking stored communications from service providers.  Although § 2707's broad wording might make § 2703 violations actionable, *see, e.g., Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 816 F. Supp. 432, 443 (W.D. Tex. 1993) *aff'd*, 36 F.3d 457 (5th Cir. 1994), Cruz Lopez's complaint does not allege

a § 2703 claim.  Consequently, the Court only considers whether the § 2701(a) claim is sufficient to overcome Pena's qualified immunity defense.

Testing qualified immunity, the Court asks whether the complaint contains sufficient facts to plausibly show that, by objectively unreasonable conduct, (1) Pena violated a right in § 2701(a) that (2) was clearly established in August 2009 and still is.  *See Morgan*, 659 F.3d at 371–73; *Kipps v. Caillier*, 197 F.3d 765, 768 (1999); *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

Section 2701(a) creates a right against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a).

The complaint sufficiently alleges that Pena intentionally and without authorization obtained Cruz Lopez's electronic communications (emails).  Additionally, it sufficiently alleges that Yahoo! is a facility through which an electronic communication service (ECS) is provided (apparently it is also a facility through which a remote computing service (RCS) is provided).  18 U.S.C. § 2510(15), 2711(1); *see Garcia v. City of Laredo*, 702 F.3d 788 (5th Cir. 2012) (discussing meaning of ECS); *United States v. Weaver*, 636 F. Supp. 2d 769, 770–72 (C.D. Ill. 2009) (noting that Microsoft, through Hotmail, acted as both ECS and RCS provider).

The complaint, however, fails to adequately allege facts showing that the emails were in "electronic storage."  Without this element—and notwithstanding the liberality given *pro se* pleadings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)—the emails do not fit within § 2701(a).

*See Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) ("[e]ven a liberally construed *pro se* . . . complaint . . . must set forth facts giving rise to a claim on which relief can be granted.").

"Electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).   Pena argues that the emails he allegedly accessed were not in electronic storage because they had already been "transmitted" (whether Cruz Lopez was sender or addressee is unclear) and that these post-transmission emails were "simply still residing in Lopez's Yahoo! account."

In response, Cruz Lopez reasons that the emails were in temporary electronic storage incident to transmission to the same extent as those protected in *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 462 (5th Cir. 1994).   Crucially, however, the emails there had not yet been opened when accessed by the Secret Service.  *Steve Jackson*, 816 F. Supp. at 442–43, *aff'd*, 36 F.3d 457, 462 (5th Cir. 1994).

Contrary to Pena's argument that transmission ends when an email enters the addressee's email account, whether an email has been retrieved or opened by the addressee (not whether it has made its way to an inbox) is the widely-recognized determinant of when it is no longer in "intermediate storage . . . incidental to the electronic transmission thereof."  *See Id.*; *United States v. Councilman*, 418 F.3d 67, 81 (1st Cir. 2005); *Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1095–97 (S.D. Ind. 2011); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 987 (C.D. Cal. 2010); *Weaver*, 636 F. Supp. 2d at 771 (C.D. Ill. 2009); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 497, 512 (S.D.N.Y. 2001).   Once opened by the addressee,

transmission is complete and any copies held by the ECS provider are no longer stored incident to transmission.

Cruz Lopez asks the Court in his response to infer that Pena "may have" retrieved unopened emails from the Yahoo! account or, possibly, from more than one email account. However, the complaint provides no factual detail or particularity to conclude that Pena is accused of accessing unopened emails. *Anderson*, 184 F.3d at 443. Instead, Cruz Lopez states in Count II that the emails printed by Pena and produced in the January 2012 FOIA disclosure (the only emails he references), were between a few weeks and a few months old and had already been "sent through" his Yahoo! account. "Sent through" does not necessarily mean "transmitted," but Cruz Lopez offers no facts in the complaint showing that the addressee (even assuming Pena accessed other email accounts) had yet to open the emails. There is insufficient allegation, then, that the emails were in electronic storage under § 2510(17)(A).[1]

## Clearly Established Law

The Court notes that, since before August 8, 2009, § 2510(17) has been clearly established to protect unopened emails. *See Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 816 F. Supp. 432, 442–43 (W.D. Tex. 1993) *aff'd*, 36 F.3d 457, 462 (5th Cir. 1994) (holding that Secret Service violated SCA by going beyond warrant and seizing computer server containing unopened email); *United States v. Councilman*, 418 F.3d 67, 81 (1st Cir. 2005); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075–77 (9th Cir. 2003) ("even the government concedes that unopened e-mail is protected by the electronic storage provisions"); *DoubleClick*, 154 F. Supp. 2d at 512; *Weaver*, 636 F. Supp. 2d at 771; *see also Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1096 (S.D. Ind. 2011) (citing numerous other courts, including the Fifth Circuit in *Steve*

---

[1] In Count II, Cruz Lopez makes the conclusory assertion that "Pena . . . accessed . . . electronic communications while those communications were in electronic storage," but no facts are offered in support.

*Jackson*, that have held unopened emails to be in electronic storage). In light of this clearly established law, which contains no border search exception, Pena's conduct could have been objectively unreasonable.

As to § 2510(17)(B), to the extent that Cruz Lopez contends in his response that opened emails were in backup storage, his argument fails because the law is not clearly established on the matter. No court within the Fifth Circuit has addressed subsection B with respect to emails; other courts are in hot debate over its meaning. *Compare Weaver*, 636 F. Supp. at 773 (concluding that, although only RCS is normally provided to opened emails, emails can be in ECS backup storage if primary, downloaded copy exists); *Jennings v. Jennings*, No. 27177, 2012 WL 4808545, at *3 (S.C. Oct. 10, 2012) (similar); *with Theofel v. Farey-Jones*, 359 F.3d 1066, 1075–77 (9th Cir. 2003) (concluding that emails, without downloaded copy, can be in ECS backup storage after transmission and until no longer needed by provider or user); *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107, 114–15 (3d Cir. 2004) (suggesting similar); *Shefts v. Petrakis*, No. 10-CV-1104, 2011 WL 5930469 (C.D. Ill. Nov. 29, 2011) (similar); *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 976 & n.2 (M.D. Tenn. 2008) (similar); *Bailey v. Bailey*, No. 07-11672, 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008) (similar); *and with Theofel*, 359 F.3d at 1076–77 ("A remote computing service might be the only place a user stores his messages; in that case, the messages are not stored for backup purposes."); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 987 (C.D. Cal. 2010) (holding that dual ECS/RCS providers are RCS providers as to opened messages); *In re U.S.*, 665 F. Supp. 2d 1210, 1214 (D. Or. 2009) (noting that, although many facilities provide both ECS and RCS, the ECS/RCS distinction "serves to define the service that is being provided at a particular time . . . rather than to define the service provider itself"); *Flagg v. City of Detroit*, 252 F.R.D. 346, 363 n.29 (E.D.

Mich. 2008) (noting that ECS provider becomes RCS provider as to messages that user has read and not deleted); *Jennings*, 736 S.E.2d 242 (Toal, C.J., concurring) (citing *Steve Jackson*, 36 F.3d 457, 461, to argue that unopened emails are in electronic storage but that opened emails, downloaded or not, are neither in storage incident to transmission nor in backup storage).

Thus, courts diverge on whether an ECS provider continues to provide ECS post-opening, and in turn whether subsection B exists on a timeline at all distinct from that of subsection A.    Although the emails might have been in backup storage under some interpretations cited above, there was not in 2009—and has not been since—a clearly established understanding of whether backup protection extends to opened emails.

In conclusion, because he has not adequately alleged the emails to have been in electronic storage, Cruz Lopez has failed to state a claim in Count II.  *Anderson*, 184 F.3d at 443 (citing *Jackson v. Widnall*, 99 F.3d 710, 715–16 (5th Cir. 1996)).  The Court need not address further questions of qualified immunity.  *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).

## Leave to Amend

Notwithstanding Cruz Lopez's failure to state a claim against Pena, the Court considers Cruz Lopez's response as a motion for leave to amend his complaint.  Fed. R. Civ. P. 15(a); *see Morin v. Moore*, 309 F.3d 316, 323 (5th Cir. 2002) ("in the interest of justice a revised theory of the case set forth in the plaintiff's opposition should be construed as a motion to amend the pleadings").  By his response to Pena's *Motion to Dismiss*, Cruz Lopez apparently wants to amend in two ways: first, to sufficiently plead facts, if any exist, supporting his contention that emails Pena accessed were in electronic storage; second, to assert a § 2703 claim against Pena for failing to follow statutory procedures when compelling an ECS or RCS provider to disclose electronic communications.

Analyzing the factors commonly considered when deciding a motion for leave to amend, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)), there appears to be no undue delay or bad faith in seeking to amend, nor would Pena suffer undue prejudice by amendment at this early stage.  The amendments, if supported factually, also do not appear to be futile—although any § 2703 and re-pled § 2701(a) claims may be questioned in light of Pena's qualified immunity.

To facilitate determination of these claims on their merits and not on the fine points of pleading, the Court will grant Cruz Lopez 21 days from the date of this order to amend his complaint.  *See Johnson v. Epps*, 479 F. App'x 583, 588 (5th Cir. 2012) (quoting *Dussouy*, 660 F.2d at 598, and finding that notwithstanding defendant's qualified immunity defense, district court should have construed plaintiff's filings as motion to amend).

## Conclusion

Pena's *Motion to Dismiss* on limitations grounds is DENIED.  On qualified immunity, Pena's motion is GRANTED subject to Cruz Lopez filing his amended complaint, with factual detail and particularity supporting his § 2701(a) and/or § 2703 claims against Pena, within 21 days of this order.  If Cruz Lopez fails to so file, dismissal of Count II will become final, with prejudice, and Pena will be dismissed as a party.  This order does not and is not to be construed to prevent Pena from urging qualified immunity as a defense to any amended complaint.

It is SO ORDERED.

Signed this the _____ day of March, 2013.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE